IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.                                                                    Criminal Action No.   3:19cr105

**RICKEY JONES,**

       **Defendant.**

### MEMORANDUM OPINION

This matter comes before the Court on Defendant Rickey Jones's Motion for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF No. 37.) The United States responded in opposition, (the "Opposition"), (ECF No. 41), and Jones replied, (the "Reply"). (ECF No. 42). The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion.

### I. Background

On July 9, 2019, the United States filed a single count indictment charging Jones with conspiracy to distribute and possess with intent to distribute five kilograms or more of a mixture containing cocaine hydrochloride. (ECF No. 10.) On August 19, 2019, Jones pled guilty to the indictment. (Plea Agreement 1, ECF No. 16.) The Plea Agreement and the Statement of Facts describe the conduct underlying Jones's offense. In early 2018, Jones entered a conspiracy with several others to distribute cocaine hydrochloride, as well as other controlled substances, in the Eastern District of Virginia. (Statement Facts 1, ECF No. 17.) As part of this conspiracy, Jones obtained large amounts of cocaine from these co-conspirators for distribution in the Hampton,

Virginia area. (*Id*.) Jones purchased the cocaine, sometimes paid for in advance and sometimes on consignment, for redistribution by Jones. (*Id.*) The conspiracy lasted approximately eighteen months. (*Id*.)

On March 19, 2019, law enforcement officers executed search warrants on Jones's primary residence and his second apartment. (*Id.* 2.) Agents found small amounts of heroin at Jones's residence, as well as U.S. currency and three firearms. (*Id*.) The agents also searched Jones's apartment and found approximately one kilogram of cocaine hydrochloride, another bag containing 900 grams of heroin, two additional handguns, scales, packaging materials, more U.S. currency, and a hydraulic press used to recompress cocaine and heroin. (*Id*.) Jones had the key to this apartment on his person when arrested on March 19, 2019. (*Id*.)

Pursuant to the Sentencing Guidelines, Jones's total offense level of 31 and criminal history category of II resulted in an advisory sentencing guideline range of 121–151 months of imprisonment. (Presentence Report "PSR" 17, ECF No. 20.) Prior to sentencing, the PSR provided information on Jones's physical condition, recognizing in 2019 that he suffered from emphysema and "had surgery to remove his right lung at MCV in March 2017." (PSR ¶¶ 53–54.) Jones also suffers from hypertension and previously broke his back "as a result of a struggle with Alcohol, Tobacco, and Firearms agents in July 1997." (*Id*.) His back injury still causes him occasional pain. (*Id*.)

On November 20, 2019, this Court sentenced Jones at the high end of the Guidelines range and imposed a term of 151 months' imprisonment and five years of supervised release. (J. 2, ECF No. 28.) Jones is currently housed at USP Hazelton.[1] The Bureau of Prisons ("BOP")

---

[1] The Parties state that Jones is housed at FCI Loretto but BOP records indicate that he is currently housed at Hazelton USP. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/. As of January 21, 2021, the BOP reports that 75 inmates have

states that Jones will be released on December 7, 2029. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.

"On April 1, 2020, Mr. Jones submitted a request for compassionate release to the Warden of FCI Loretto." (Mot. 8, ECF No. 37.) On April 10, 2020, the Warden denied that request. (*Id.*)

On July 20, 2020, Jones filed a *pro se* Motion for Home Confinement. (ECF No. 29.) Thereafter, the Court appointed Jones counsel to assist in filing the instant Motion for Compassionate Release. (ECF No. 30.) In the Motion, Jones describes the current public health crisis caused by COVID-19. (*See e.g.*, Mot. 4–5.) Jones, now fifty-seven-years old, contends that he "has a long and well documented medical history with serious health conditions including emphysema, hypertension, and the removal of a lung." (*Id.* 9.) Jones avers that "[u]pon his release, [he] would live with his wife and her daughter [in] a three-bedroom residence." (*Id.* 12.) Jones further claims "[h]is wife would arrange and provide transportation for Mr. Jones to see medical care providers and has already contacted his primary care physician. When appropriate, Mr. Jones would go to work for his wife's parcel delivery company and obtain his drivers license." (*Id.*)

The United States opposes his request for compassionate release, arguing that Jones's "conviction stems from a drug distribution operation involving cocaine and heroin, a stash house, and firearms." (Opp'n 1, ECF No. 41.) The United States observes that Jones's criminal history, "which began at age twelve and extends to the present, involves numerous instances of drug distribution and possession, unlawful firearm possession, and a malicious wounding." (*Id.*) The

---

tested positive for COVID-19 at Hazelton USP. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/.

United States asserts that while Jones has serious health conditions, his offense conduct and criminal history do not support granting him compassionate release. (*Id.* 14.)

After reviewing Jones's Motion and recognizing the "rapidly changing circumstances regarding COVID-19" and related vaccine development, the Court asked the Parties to file a joint status update regarding the BOP vaccine distribution plan and whether Jones would have priority access to the vaccine. (Jan. 4, 2021 Order, ECF No. 44.) On January 19, 2021, the Parties informed the Court that "Jones received the Pfizer COVID-19 vaccination on January 6, 2021, and . . . will receive his second vaccination at the appropriate interval." (Jt. Status Update 1, ECF No. 45.)

## **II. Legal Standard: Compassionate Release Under the First Step Act of 2018**

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[2] Prior to the First Step Act in 2018, the BOP had the sole authority to petition

---

[2] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

  **A.**  **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

**B.** **Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the

petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283. As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant postconviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18

U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

The Guidelines policy statement concerning compassionate release, though not binding, further instructs Courts to consider the 18 U.S.C. § 3142(g) factors. U.S.S.G. § 1B1.13.[3] These include "the nature and circumstances of the offense charged . . . ; the history and characteristics of the person . . . ; [and,] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### III. Analysis

After due consideration, the Court will deny the Motion. The Court first determines that Jones has sufficiently exhausted his administrative remedies.

Next, the Court finds that Jones's health conditions raise serious concerns about his well-being should he contract COVID-19 while incarcerated, making him eligible for compassionate release consideration. In its Opposition, the United States concedes that Jones's "health status qualifies as an 'extraordinary and compelling' reason" for compassionate release eligibility.

---

[3] The United States Sentencing Guideline § 1B1.13 provides that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

(Opp'n 10.) Because Jones's medical conditions entitle him to compassionate release consideration, the Court turns to statutory sentencing factors and the relevant Guidelines policy statement.

After considering the relevant statutory sentencing factors and the policy statement, the Court will deny the Motion. Pursuant to USSG § 1B1.13, the Court should consider whether extraordinary and compelling reasons warrant the reduction, whether the defendant is a danger to the safety of any other person or to the community as provided in § 3142(g), and whether the reduction is consistent with the policy statement. *See McCoy*, 981 F.3d at 282 n.7 (noting that § 1B1.13 "remains helpful guidance even when motions are filed by defendants"). Upon review, Jones's criminal history and underlying convictions demonstrate that he presents a threat to the public due to his disregard for the law and that conditions of release will not assure the safety of the community. Jones committed multiple felony drug offenses as an adult. At the time Jones committed the underlying offense, a mere 19 months ago, he was 55 years old. Jones not only dealt significant quantities of illegal drugs, he did so while possessing a firearm. The PSR also shows that Jones was previously involved in a shooting, which resulted in a malicious wounding conviction. (PSR ¶ 28.) And despite a lengthy period of incarceration between June 1996 and January 2014, Jones committed several drug offenses before entering prison in 1996 and returned to drug trafficking shortly after being released from prison in 2014. Looking to the § 3142(g) factors, Jones's repeated drug offenses reflect that he presents a danger both to himself and the community.

Turning to the § 3553(a) factors, Jones has served less than 15% of his 151 month sentence. Under such circumstances, early release would not afford adequate deterrence to Jones's repeated criminal conduct. Although the Parties indicate that Jones has not committed

any disciplinary infractions during his time in federal detention, his previous criminal history suggests that the Court should consider public safety and whether his sentence promotes respect for the law.

Jones further contends that his Motion should be granted because he has competed two vocational classes and works in the electric shop detail with average performance reviews. (Mot. 11–12.) In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d 397–98. The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397.

While Jones's participation in work and vocational programs during his limited time in prison are commendable, these post-rehabilitation measures do not warrant his early release in light of the seriousness of his convictions and the time remaining on his sentence. Jones displays progress in his rehabilitation and this Court commends him for doing so. Congress, however, has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

The Court acknowledges that Jones has serious medical concerns. Jones has only one lung and hypertension and both conditions raise serious implications should he contract COVID-19. But the Bureau of Prisons has identified Jones's chronic care needs and continues to make medical care available to him. Notably, the record reflects that Jones received his first COVID-19 vaccination on January 6, 2021 and he will receive his second vaccination soon. Considering

Jones has received the COVID-19 vaccination, the Court believes that he faces reduced risks from the virus, further weighing against his request for compassionate release.

The Court recognizes the grave health risks prisoners are facing during this pandemic and commends the nationwide efforts to promptly vaccinate prison staff and inmates, which will save lives. The Court appreciates the Parties' joint status update regarding Jones's vaccination schedule and the BOP vaccination plan.

In sum, the Court concludes that the current record does not justify Jones's early release from federal imprisonment.

## IV. Conclusion

For the reasons explained above, the Court will deny the Motion. (ECF No. 37.)

/s/
M. Hannah Lauck
United States District Judge

M. Hannah Lauck
United States District Judge

Date: January 21, 2021
Richmond, Virginia